Dallmeyer v. Giroux

*Kenneth J. Sparler,* for plaintiffs.
*Robert W. Geigley,* for defendants.

MacPHAIL, P. J., May 23, 1974.—This action was initially filed to the equity side of the court. Plaintiffs contended in their complaint that defendants had entered into an installment sales agreement for the purchase of real estate, that defendants defaulted in the payment of the installments, and that by the terms of the contract plaintiffs reserved to themselves the right to terminate the contract under such circumstances and to treat the unpaid installment payments, accrued as of the date of termination, as rent. Plaintiffs then asked for judgment in the amount of the unpaid installments in the sum of $4,023.36 and requested that the court order defendants to vacate the subject real estate. Preliminary objections were filed by defendants and, after hearing oral argument and receiving briefs, we entered the following order:

"AND NOW, November 14, 1973, for the reasons set forth in the Memorandum Opinion of Court in the case of Craig E. Dallmeyer, et al. v. Jack James Jett, Sr., et ux., No. 3 July Term 1973, the motion to strike and demur (sic) in the within matter are overruled. The Prothonotary is directed to transfer the within

action to the law side of the court. The defendant shall have twenty (20) days from the date of this order to file a responsive pleading to the complaint."

It must be noted here that Craig E. Dallmeyer et al. v. Jack James Jett, Sr., et ux., referred to in the foregoing order, was an action almost identical to the one brought in the above-captioned matter and that the same objections had been filed by the same defense counsel who is the lawyer for defendants in the present proceeding.

On December 6, 1973, plaintiffs took a default judgment against defendants for failure to file a responsive pleading. Defendants filed a petition to open that judgment on December 11, 1973, wherein they alleged, inter alia, that their counsel had contacted counsel for plaintiffs on December 3, 1973, asking for an extension of time to file the pleading but that the request was denied. Plaintiffs filed an unverified answer to the petition to open, whereupon defendants moved to strike off the answer because it was not verified. Then, defendants filed a motion to make absolute the rule issued pursuant to the petition to open. We entered an order refusing the motion to make the rule absolute and fixed a time for argument on defendants' motions to open and to strike, both of which are now before us.

Pennsylvania Rule of Civil Procedure 206 states that every petition *and answer* containing allegations of fact shall be verified. The comment to the rule specifically refers to the Act of April 9, 1915, P. L. 72, 12 PS §514, and says that the intent of the rule was to extend the requirements of verification to *answers* as well as petitions. While the Act of 1915, supra, is specific with respect to sanctions for failure to comply with the requirement of the statute, the rule has no sanctions unless one could infer that the comment

to the rule implies that the sanctions set forth in the statute have now been extended to unverified answers. We can find no cases dealing specifically with unverified answers and recent cases do not seem to be following the strict interpretation of unverified petitions as set forth in Taylor Township Election, 79 D. & C. 193 (1951). See Yanofsky v. Bannacker, 46 D. & C. 2d 435 (1969), and Noll Appeal, 27 D. & C. 2d 780 (1962).

After reviewing the answer filed by plaintiffs, we are of the opinion that there are allegations of fact contained therein and that the answer is not verified. Plaintiffs should be permitted to file a proper verification to the answer, however. This would seem to follow from the fact that where the court denies a petition because it is not properly verified, the petitioner can easily file a new petition which is verified. The respondent should have the same privilege, especially in view of the fact that answers are seldom presented to the court while petitions customarily are.

However, we prefer to deal here with the petition to open without regard to plaintiffs' answer, and we will, for the purpose of ruling on the petition to open, disregard in toto the allegations in plaintiffs' answer thereto.

Petitions to open are addressed to the equitable conscience of the court: Kraynick v. Hertz, 443 Pa. 105 (1971). In the case now before us, a judgment in a substantial amount has been taken against defendants and we are mindful of that fact. On the other hand, there is nothing in the pleadings before us to indicate that defendants did not, in fact, occupy the subject real estate without paying anything to plaintiffs beyond the minimal amounts set forth in paragraph 6 of plaintiffs' complaint. It is stated in the petition that Donald B. Giroux "relinquished possession of five

of the six lots" and gave notice of termination to plaintiffs, but, as will be noted later, there is no legal basis for the so-called relinquishment and termination. In any event, at least part of the tract was occupied up to the time the complaint was filed.

To prevail in the matter now before us, defendants must show that: (1) the petition to open was promptly filed; (2) there is a defense to the merits, and (3) there is some reasonable explanation for the default: Triolo v. Philadelphia Coca Cola Bottling Co., 440 Pa. 164 (1970). There is no question that the petition was not timely filed. The judgment was taken December 6, 1973, and the petition was filed five days later.

With respect to the explanation for the default, we quote from defendants' petition:

"[I]t being inequitable to enter a default judgment under circumstances where the Defendant did not have actual notice from the Court to plead, and where the time in the Court Order to plead could not be anticipated by the Defendant, and where it was impossible for the Defendant's attorney to comprehend the Order and interpret the Order and contact his client within the twenty days set forth and where the refusal of the Plaintiffs to stipulate additional reasonable time was purely recriminatory and inequitable, and where the judgment itself is not based on a clear unequivocal contract of obligation as a matter of law."

In addition, defendants' counsel has attached a page to the petition, signed only by himself, alleging that the default judgment was improper for procedural reasons. Suffice it to say, in answer to that latter contention, that the prothonotary was obliged to enter the judgment on praecipe and plaintiffs, under the circumstances, were within their right in requesting that judgment be entered under the provisions of Pa. R. C. P. 1037(b). In Dallmeyer et al. v. Jett, et ux.,

supra, the case to which we referred in our order of November 14, 1973, we stated in our memorandum opinion: "the action is in ejectment." Therefore, the rules of procedure applicable to ejectment apply to the taking of a default judgment and not those relating to trespass, as argued by defendants' counsel.

We have carefully reviewed appellate and lower court cases where a default judgment has been opened. In all of those cases, there is something of an emergency, extraordinary or equitable nature to which the court can point which would excuse or explain the reason for the default. Try as we might in the case before us, we cannot see how an *attorney* can say that he did not have actual notice from the court to plead when the order plainly states that defendant would have 20 days in which to plead. We are also hard put to ascertain why it was "impossible" for defense counsel to "comprehend and interpret" the order. If there was something confusing about that order, it would certainly have been a very small matter for the attorney to make an inquiry of the court concerning his confusion. With respect to notice, where a party is represented by counsel there is no duty upon the court nor upon opposing counsel nor upon the prothonotary to notify the party directly of opinions or orders, unless the order falls within the provisions of Pa. R. C. P. 1038, into which category the order of November 14, 1973, does not fall.

The only contentions on this point bearing any semblance of merit are that counsel was unable to contact his client and that opposing counsel unreasonably refused an extension of time. In order to justify the statement that counsel was unable to contact his client, we have to infer from the allegations in the petition that this is the fact, because the fact is nowhere stated in categorical terms. What is said is that defendant,

Donald Giroux, was an insurance adjuster who "travels all along the Atlantic Coast," that he saw his attorney on November 13th, that counsel could not "comprehend and interpret" the order and contact his client within 20 days, and that the emergency extension was requested to enable counsel to contact his client. No attempt was made to obtain an extension until the nineteenth day. It is not clear to us whether it took that long for counsel to "comprehend and interpret" the order or whether he was unable to contact his client after he did "comprehend and interpret" the court order. As we have previously stated, there was nothing to "comprehend or interpret" in the order, since it is self-explanatory. In the absence of an unqualified statement that counsel was unable to contact his client between November 14th and December 3rd, we simply cannot accept what is stated in the petition as a reasonable explanation for the default.

Pennsylvania lawyers are bound by a Code of Professional Responsibility. Disciplinary Rule 7-106(C)(5) requires a lawyer to comply with known local customs of courtesy and practice. Ethical Consideration 7-38 states that a lawyer should accede to a reasonable request regarding continuances, waivers of procedural formalities and similar matters which do not prejudice the rights of his client. Disciplinary Rule 7-101(B) authorizes a lawyer in the exercise of his professional judgment to waive or fail to assert a right or position of his client. It seems to us that plaintiffs' counsel acted hastily in this matter and that a 10-day extension as requested by defendants' counsel would not have prejudiced his clients' rights. However, defendants' counsel was not without recourse. Pennsylvania Rule of Civil Procedure 248 specifically authorizes the *court* to extend the period of time prescribed by the rules for the doing of an act. If the court can modify the time

prescribed by the Pennsylvania Rules of Civil Procedure, it certainly can modify its own order. Counsel made no effort to remedy the problem with which he was confronted. He cannot now complain that unfair advantage was taken of him or his clients. We conclude that defendants have not furnished us with a satisfactory explanation for the default.

We turn now to the question of whether defendants have stated a defense to the merits. The petition states that the contract upon which plaintiffs based their opinion was "voidable" and had been terminated by Donald Giroux "on or about August 1970," and that the parties were actively renegotiating the contract up until December 3, 1973. The petition further states that the contract was voidable and fraudulent because the subject tract was sold as a commercial plot for the development of a residential section for mobile homes, but that of the six lots purchased only one passed a Department of Environmental Resources percolation test. Finally, defendants say that "these facts" made the agreement voidable as to defendant "as well as voidable as to all lots not passing the perk (sic) test, and therefore not marketable as advertised and as contracted as suitable for mobile home sites."

From the exhibits attached to defendants' petition to open, we note that the sales agreement calls for the sale of a "300 x 400 commercial" tract described as being "the first 300 feet of the part marked commercial with a depth of 400 feet to the south of Route No. 30." There is nothing to the agreement whatsoever which states or implies that the subject tract was purchased for a residential mobile trailer park.

Attached to the "Sales Agreement" is another paper entitled "Protective Covenant and Restrictions." *That* paper states that *plaintiffs* herein intended to develop the tract known as "Colonial Gardens Mobile

Homes Subdivision" as a residential section for mobile homes. That paper also states that no on-site sewage disposal system would be permitted unless the same is approved by the "state public health authority." Since the signatures of defendants also appear on that paper, we assume that they know of the requirements relating to on-site sewage disposal at or before the time they entered into the agreement of purchase with plaintiffs. Therefore, we fail to see how the fact that certain lots, presumably within the tract purchased by defendants, did not pass a percolation test would make the contract between the parties either voidable or fraudulent. Certainly, there is nothing in any of the papers alleged to be, or to be a part of, the contract which makes the contract voidable in express terms.

Neither do we see the merit of defendants' contention that since Mr. Giroux gave notice to plaintiffs that he was terminating his agreement and that he was making no further payments, he thereby had no further obligations under the contract. It must be noted that there is nothing to indicate that plaintiffs ever agreed that the contract could be or was terminated. It is fundamental law that a party to a contract cannot unilaterally rescind that contract in the absence of fraud, accident, mistake or duress. Moreover, there is an admission in paragraph 10 of the petition that defendants retained possession of one lot and have made no payment thereon. In this connection, we again observe that defendants did not buy six lots but rather one tract of real estate. It is also fundamental law that one cannot avoid part of a contract: Section 487, Restatement, Contracts.

Finally, it will be observed that throughout the petition to open, reference is made only to the acts of defendant, Donald B. Giroux. His acts would not be binding upon Dorothy M. Giroux in the absence of

some implied agency. The petition to open says that defendants are no longer husband and wife and that Mrs. Giroux never received a copy of the complaint or of the court order of November 14, 1973. Yet, we note that the preliminary objections filed by counsel was on behalf of *defendants*, Donald B. Giroux and Dorothy M. Giroux.

In summary, we conclude that defendants have failed to set forth a meritorious defense as they were obliged to do.

## ORDER OF COURT

And now, May 23, 1974, the petition to open is refused.